```
 1                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                   CASE NO. 23-14042-CRIMINAL-CANNON

 3

    UNITED STATES OF AMERICA,
 4
                    Plaintiff,                  DECEMBER 12, 2023
 5
          vs.
 6                                          FORT PIERCE, FLORIDA
    STEVEN SCHRECK,
 7                                            PAGES 1 - 49

 8                    Defendant.
    _____/
 9

10                    TRANSCRIPT OF MOTION HEARING
                  BEFORE THE HONORABLE AILEEN CANNON
11                    UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   FOR THE PLAINTIFF:     MICHAEL PORTER, AUSA
                            Office of U.S. Attorney
14                          101 South US Highway One
                            Suite 3100
15                          Fort Pierce, Florida  34950

16

17   FOR THE DEFENDANT:     AISHA NASH, AFPD
                            Office of U.S. Public Defender
18                          109 North 2nd Street
                            Fort Pierce, Florida  34950
19

20

21

22

23   REPORTED BY:          DIANE MILLER, RMR, CRR
                            Official Court Reporter
24                          diane_miller@flsd.uscourts.gov

25
```

```
 1                    P-R-O-C-E-E-D-I-N-G-S

 2          THE COURT:  Good morning.

 3          Please call the case.

 4          THE COURTROOM DEPUTY:  United States of America

 5   versus Steven Schreck, case number 23-14042-Criminal.

 6          Will the parties please make your appearance,

 7   starting with the Government?

 8          MR. PORTER:  Good morning, Your Honor; Michael Porter

 9   on behalf of the United States.

10          THE COURT:  Good morning.

11          MS. NASH:  Good morning, Your Honor; Aisha Nash,

12   Assistant Federal Public Defender, on behalf of Mr. Steven

13   Schreck a/k/a Eugene Sandburg, who is seated to my left at

14   counsel table, Your Honor.

15          Good morning, Ms. Nash.

16          Good morning, Mr. Schreck.

17          All right.  We are here for argument on the

18   Government's motion in limine, docket entry 12.  The defendant

19   has responded in opposition, and I have reviewed that response.

20   I also received an exhibit list from the Government for today's

21   hearing which includes six Government, exhibits including the

22   recorded interview referenced in the papers.

23          Before we get started hearing the evidence or

24   listening to the recording, Mr. Porter, can you just please

25   give me an overview of the allegations in the indictment and
```

```
 1    anything you think is additional material permissible under the

 2    federal rules?

 3            MR. PORTER:  Absolutely, Judge.

 4            So this case was charged by way of a two-count

 5    indictment.  Count 1 of the indictment charges use of a

 6    passport obtained by a false statement in violation of Title

 7    18, United States Code, Section 1542; and Count 2 of the

 8    indictment charges making a false statement in a passport

 9    application, also in violation of Title 18, United States Code,

10    Section 1542.  Section 1542 actually has two clauses which is

11    how the United States is able to charge this.

12            The allegations in the indictment stem from a

13    passport renewal application.  I do have an extra copy of the

14    indictment if --

15            THE COURT:  I have the indictment.  I just want you

16    to point me to the two clauses.

17            MR. PORTER:  Yes, Your Honor.

18            THE COURT:  The first count is which clause?

19            MR. PORTER:  If you look at Section 1542, the first

20    clause says, "Whoever willfully and knowingly makes any false

21    statement in an application for passport with the intent to

22    induce or secure the issuance of a passport under the authority

23    of the United States, either for his own use or the use of,

24    another, contrary to the laws regulating the issuance of

25    passports."  So that is Count 2, making a false statement in a
```

December 12, 2023.

```
 1   passport application.
 2            THE COURT:  So the false statement in Count 2 is the,
 3   I guess, provision of the old fraudulent passport in the
 4   renewal application?
 5            MR. PORTER:  Correct, Judge.
 6            THE COURT:  Okay.  What is the false statement in
 7   Count 1?
 8            MR. PORTER:  So Count 1, Your Honor, actually charges
 9   the use of a passport obtained by a false statement.  So when
10   Mr. Schreck submitted his passport renewal application, he had
11   to submit his old passport with it.  That passport was obtained
12   through a false statement because in that passport application
13   in 2011 that Mr. Schreck submitted to get that 2011 passport,
14   he lied about his date of birth and his place of birth.  So
15   when he submitted that fraudulent passport with his 2021
16   passport application, he used it; and that passport was secured
17   by reason of a false statement, that false statement being his
18   lie about his date of birth and place of birth.
19            THE COURT:  In the old passport?
20            MR. PORTER:  In the old passport, correct.
21            THE COURT:  So what is actually different between
22   Count 1 and 2?
23            MR. PORTER:  Count 1 actually requires Mr. Schreck to
24   use the passport, so it's an added element.  He has to actually
25   use the passport.  Count 2 just --
```

```
 1              THE COURT:  So like, in this case, actually at a

 2    travel checkpoint, so to speak?

 3              MR. PORTER:  That would be one example.  Another

 4    example would be proof of identity.  In order for Mr. Schreck

 5    to obtain a new passport by mail, he had to submit his old

 6    passport with it; that I believe under the prevailing case law

 7    constitutes use.  If he did not submit his prior passport with

 8    his renewal application, he could not have done it through the

 9    mail.

10              THE COURT:  So the use in this case is what, for

11    Count 1?

12              MR. PORTER:  The use for Count 1 is the submission of

13    his old passport so that he could get a new one, the attempt to

14    get a new one; otherwise, he would have had to have gone in

15    person to the passport agency.

16              THE COURT:  So if he hadn't done this by mail, there

17    would be no Count 1?

18              MR. PORTER:  If he hadn't done this by mail, there

19    would be no Count 1 under these facts.

20              THE COURT:  It's a little hard to see the

21    distinction.

22              Okay.  So Count 2 --

23              MR. PORTER:  Count 2 is a little different, Judge,

24    because Count 2, when Mr. Schreck submitted his passport

25    renewal application -- and I have the applications as
```

```
1    exhibits -- one of the things that he had to certify, and this
2    is what Count 2 is about.  One of the things he had to certify
3    was that everything that he attached to that passport
4    application was true and correct and not fraudulent.  By
5    including his 2011 passport, which was fraudulent, he made a
6    false statement.
7            THE COURT:  So even though there is nothing false
8    about the 2021 renewal standing alone, the information
9    contained in the 2021 renewal, it becomes false by virtue of
10   his statement in the 2021 renewal that what he is attaching is
11   true because even though he is coming clean in 2021, that he is
12   who he is now, you are saying it is still false because he
13   certified that the attachments were true and they were not?
14           MR. PORTER:  Correct, Judge.
15           I don't think necessarily he is coming clean; but
16   yes, the false statement with respect to Count 2 is the
17   certification that all of the documents that were attached, and
18   essentially the only document that was attached was his prior
19   passport, the certification that all of the documents that were
20   attached were true and correct and not fraudulent.
21           THE COURT:  So getting to the "coming clean point,"
22   is it not the case that in 2021, he is giving his real name,
23   real date of birth, real location of birth, et cetera?  There
24   is nothing false about the statements in and of themselves in
25   the 2021, other than the certification piece?
```

 1          MR. PORTER:  There is nothing false about those

 2   statements, Judge, that is correct.  It is the certification

 3   piece that is false.

 4          THE COURT:  Okay.

 5          MR. PORTER:  And but for Mr. Schreck, he could not

 6   have done this via mail because he had a fraudulent passport.

 7   What he would have had to have done is gone into the passport

 8   agency, which I submit would have elicited a number of

 9   questions about why there were inaccuracies, misstatements in

10   his prior passport applications.

11          I submit, in my theory of the case, that's why he did

12   this via the mail, so that if something ever came back, he

13   could claim no harm, no foul, simple mistake.  And I think that

14   that is borne out in some of the 404(b) evidence that I want to

15   admit at trial, which includes his recorded interview.

16          THE COURT:  It's a quirky case.

17          MR. PORTER:  It is a quirky case, Judge.

18          THE COURT:  Okay.  I think I understand the general

19   framework, so why don't we talk about the specific evidence you

20   want to introduce as 404(b), or as extrinsically intertwined

21   evidence?

22          MR. PORTER:  Yes, and just to give the Court a little

23   bit of context and background, I have submitted all of

24   Mr. Schreck's prior passport applications, I seek to admit all

25   of them as evidence.

```
 1              In 1977, Mr. Schreck submitted his first passport

 2   application.  In that passport application, he lied about his

 3   name; he lied about his date of birth; he lied about his place

 4   of birth; he lied about his parents' identities.

 5              THE COURT:  There is no dispute about any of that,

 6   correct?

 7              MR. PORTER:  I don't believe there is a dispute about

 8   any of that.

 9              THE COURT:  Okay.

10              MR. PORTER:  He also submitted a false birth

11   certificate in support of that passport application, so that

12   passport application was granted, and the reason I say there is

13   no dispute about it --

14              THE COURT:  And, excuse me for the interruption, but

15   that year, the undisputedly, I think, false passport is from

16   what year again?

17              MR. PORTER:  That first one is from 1977.

18              THE COURT:  That's what starts the series of false

19   passports?

20              MR. PORTER:  Yes.

21              THE COURT:  Keep going.

22              MR. PORTER:  I say it is undisputed, the reason I

23   believe it is undisputed is part of the recorded interview that

24   I want to admit, Mr. Schreck admits that did he that, so I

25   don't know if it is going to be disputed at trial or not, but
```

1  part of his interview he admits it, so that's why I say that I

2  think it is undisputed, but I need to be able to play that at

3  trial for the jury.

4          THE COURT:  Okay.

5          MR. PORTER:  So, we fast forward to 1999.  That first

6  passport application that Mr. Schreck submitted was in person,

7  because for your first passport you have to go in person.

8          The second one that he submitted, and this is in

9  1999, he submitted this one by mail.  The reason he was able to

10  do this by mail is because he already had a passport.  Now at

11  this point, the passport agency did not know that it was

12  fraudulent.  So he made misstatements in his 1999 passport

13  application as well.  He lied about his date of birth, and he

14  lied about his place of birth.

15          Now, Mr. Schreck no longer had to submit proof of his

16  identity because his prior fraudulent passport was his proof of

17  identity.  So he did not have to make another lie because he

18  had the prior passport to serve as his identification.

19          We fast forward about ten years, and in 2011,

20  Mr. Schreck again submits this time a passport renewal

21  application.  He also does it by mail, he lied about his date

22  of birth, and he lied about his place of birth in this passport

23  application, again, he no longer had to submit proof of his

24  identity, because his prior fraudulent passport served as that

25  proof of his identity.

1          That's my computer, Judge, I have it fired up so that

2    when it is time to play the recordings, we can jump right into

3    it.

4          THE COURT:  Okay.

5          MR. PORTER:  And finally, the 2021 passport which is

6    the subject of the indictment in this case, and that was in

7    April of 2021, that's Mr. Schreck's fourth passport

8    application.

9          In this one, he did not lie about his date of birth,

10   he did not lie about his place of birth, but he did submit his

11   prior.

12         THE COURT:  Or name.

13         MR. PORTER:  Or name.  And the reason at this point

14   that he didn't lie about his name, is because he had legally

15   changed his name by this point.

16         THE COURT:  Okay.  But he did lie by certifying

17   according to you?

18         MR. PORTER:  Yes.

19         And I have -- I can put it up on the ELMO, if you

20   like, but I have the certification that is on the passport

21   application that he had to sign, and that he did sign, and it

22   essentially says, I certify that all documents attached to this

23   application are true and correct and not fraudulent.  But his

24   2011 passport was clearly fraudulent.  And he knew it was

25   fraudulent because he had to lie to get it.

1              So that is the passport applications.

2              So that's one set of evidence that the government is

3     seeking to admit through 404(b), I'm also seeking to admit a

4     related set of evidence and that is his recorded interview.  So

5     if you fast-forward a little bit, what happened in April of

6     2021, and this is why I believe Mr. Schreck did not go to the

7     passport agency in person, several red flags came up with his

8     passport application, and it was referred to DSS, Diplomatic

9     Security Service, to investigate, which they did.  They pulled

10    his prior passport applications and they started doing some

11    research, and they discovered that, in fact, Mr. Schreck's

12    prior passport applications were all fraudulent, that he had

13    assumed someone's identity in 1977 and what I think the proof

14    at trial will show, through Mr. Schreck's admissions in the

15    recorded interview, is that in 1977, he was living in Kansas,

16    at that time he just escaped from prison.  He already had

17    amassed several felony convictions, he wanted to change his

18    life, and he wanted to shed his old identity, now he needed a

19    new identity to be able to do that, otherwise, everywhere he

20    went, any time he applied for a job, any time he came into

21    contact with law enforcement, they would figure out who he was

22    and he was an escaped prisoner.

23             So he read the newspaper, he saw the obituaries, he

24    saw a man named Harvey Eugene Sandburg, who died on March 18,

25    1977, in a motorcycle accident.  He was able to gain access to

1   Mr. Sandburg's biographical information, which included his

2   place of birth, his date of birth, and somehow he got a false

3   birth certificate, and that is why Mr. Schreck did what he did.

4   He needed to change his name and he needed to change his

5   identity so that he could avoid detection by law enforcement.

6          Now, in that recorded interview, Mr. Schreck makes

7   several admissions, he confirms and identifies his 2011

8   passport and all of his prior passport applications, he

9   confirms his correct date of birth, he admits he lied on his

10  prior applications, he admits why he did it, again, he did it

11  because he had just escaped prison, and he needed a new

12  identity to be able to avoid detection.

13         He admits that he knew he was using someone else's

14  name and date of birth, he says he got it off a death

15  certificate, he said he didn't care that it was illegal,

16  because he was an escaped prisoner and did not want to get

17  caught, he further explained more details about his crime, he

18  said he had just escaped prison, the state of Oregon, the

19  federal government and everybody else you can think of was

20  looking for him because he had absconded from prison and when

21  the agents were questioning him, essentially said, would you

22  use your own him under those circumstances?

23         He explained that he spent several years in prison

24  for various crimes, he also said, quote-unquote, every time I

25  escaped, which I did several times, I would adopt another name,

1    I have used numerous names.  Then he admitted, ultimately, that

2    he read a newspaper and saw Mr. Sandburg's death listed, and

3    that's how he gained access to Mr. Sandburg's identity.

4          Now, I have the recorded interview, it happened in

5    March of this year, there were 2 DSS agents there.  It is about

6    22 minutes long, I have tried to extract as much from that

7    recording that I think is inadmissible or not relevant to the

8    case, so what I have done is I have two clips, each one is

9    about six minutes, and I would like to play those for the

10   Court.  These are the clips that I seek to admit at trial, and

11   in these two 6-minute long clips, you hear Mr. Schreck confess,

12   you hear him explain why he did what he did, and all of the

13   things that I just went over.

14          Part of the reason --

15          THE COURT:  Can you explain your argument why this is

16   404(b) and not inextricably intertwined since --

17          MR. PORTER:  I think it is inextricably intertwined,

18   Judge.  My 404(b) is an alternative argument.

19          THE COURT:  So tell me why you think it is not 404(b)

20   principally?

21          MR. PORTER:  Judge, this is part and parcel with

22   respect to the recordings, this is his confession, this is his

23   admission, not only that he did what he did, but exactly why he

24   did it.  It goes directly with the Government's case and the

25   evidence in this case.  It's an integral and natural part of

December 12, 2023.

```
 1   the charges and any case where --

 2              THE COURT:  Can you be a little bit more precise

 3   other than just saying it is integral?  Is it because to prove

 4   Count 2, for example, you have to prove that the attachment is

 5   false.  In order to prove that the attachment is false, then,

 6   of course, you would naturally want to use a confession

 7   admitting that it is false.

 8              MR. PORTER:  Correct, but also, that recorded -- the

 9   recorded interview, Judge, he confesses to the entire crime.  A

10   defendant's confession, I submit, is always an integral part,

11   it is always inextricably intertwined with the charges

12   contained in the indictment.

13              To preclude the government from admitting the

14   defendant's confession into evidence, especially in a case like

15   this, would be extremely problematic, because this is a fraud

16   case, and intent usually in fraud cases is one of the most

17   difficult elements for the government to prove.

18              This case is no different.

19              I don't think I'm going to have any trouble proving

20   at trial that the defendant made misstatements, but the jury is

21   going to be left with the question of why did he do it.  And

22   that's kind of what is at the heart of almost all fraud cases

23   is the why.  Not the did he do it, but the why.  Because

24   oftentimes in fraud cases, the defense that you get from the

25   defendant is, I made a mistake, no harm, no foul, there was no
```

```
 1    intent here, it was an accident.  And the way the government

 2    rebuts that is with evidence of the defendant's intent.

 3            His confession is just that, he explains why he did

 4    it.  And I think in a case like this, it is going to be

 5    extremely important for the jury to understand the why.

 6    Otherwise, they are going to be left with the impression, maybe

 7    it was a simple mistake, I should be allowed to present

 8    evidence explaining why the defendant did it to negate any

 9    argument, and I do think that's going to be the defense in this

10    case, is that this was simply a mistake.  I think --

11            THE COURT:  All right.  I'll listen to the clips now

12    please.

13            MR. PORTER:  I'll start with the first one.  It

14    starts at the very beginning of the interview.  If there is any

15    point that Your Honor would like me to pause it, I am happy to

16    do so.  I think it is pretty clear and it is not very long.

17        (Audio recording played in open court.)

18            That's the first interview, Judge -- I'm sorry,

19    that's the first clip from the interview, I'm going to play the

20    second clip now, it is about the same length.

21        (Audio recording played in open court.)

22            MR. PORTER:  That's the extent of both interviews,

23    Judge.

24            One thing that I think is important to recognize in a

25    case like this is that without the first fraudulent passport,
```

December 12, 2023.

1   Mr. Schreck never would have been able to renew his passports

2   through the mail.  Why is that problematic?

3          Throughout the '70s and '80s, he had active warrants

4   out for his arrest.  Had he been required to go into a passport

5   agency, it likely would have resulted in interrogation, it

6   could have put him in jeopardy, I'm not seeking to admit this

7   into evidence at trial.  But when we indicted the case, I

8   learned that Mr. Schreck actually had an outstanding arrest

9   warrant from California.  If he had had to have gone into the

10  passport office, in person, all of these potential problems

11  could have surfaced for him.

12          THE COURT:  You mean for the 2021 renewal?

13          MR. PORTER:  Yes, for the 2021 renewal.  By doing

14  this by the mail, he gives himself plausible deniability.  That

15  is no harm, no foul, I put it all out there.  Hey, if something

16  was wrong, my bad.  If he had been required to go into the

17  passport agency, I submit that it would have been a lot more

18  problematic for him.

19          THE COURT:  Why exactly, though?  I mean, he is

20  attaching the old fraudulent --

21          MR. PORTER:  Correct, because if he went into the

22  passport agency, one, they probably would have found out about

23  any outstanding arrest warrants; two, they would have asked

24  him -- they would have had to have asked him, what happened,

25  what is wrong with this, you have a different date of birth,

1    and you have a different place of birth in this passport

2    application, and then they would have gone back to his prior

3    ones, all the way back to 1977, and they would have confronted

4    him about it.

5         THE COURT:  Which is the same thing that happened in

6    this March interview, and he very quickly admits it all.

7         MR. PORTER:  Correct, that's the same thing that

8    happened in the March interview, I agree, but at that point,

9    the game was up, and I think he had plausible deniability and I

10   think what his theory is, I put it all out there, and I just

11   put it in the mail and I gave it to the passport agency and I

12   figured, hey, you guys would tell me if there was something

13   wrong, but the reality is, he knew there was something wrong,

14   he knew there was something wrong when he submitted that

15   application, he knew there was something wrong when he

16   certified it.  How did he know there was something wrong?  He

17   had been doing it for 40 years, he tells us in his recorded

18   interview that he knew there was something wrong.  Why?

19   Because in the '70s, he decided to assume someone else's

20   identity and completely change his name.  And this passport was

21   an integral part of that, and the ability to continue to get

22   new passports was important to his ability to avoid detection

23   by law enforcement, and the lies that he made in that first

24   passport application was critical to his ability to continue to

25   get fraudulent passports by the mail.

```
 1              THE COURT:  All right.  Let me ask you some
 2    housekeeping questions, I take it you don't have a transcript
 3    for either clip?
 4              MR. PORTER:  I don't, Judge.  My theory was I thought
 5    everybody was pretty clear on the recordings, I do have a copy
 6    for Your Honor.
 7              THE COURT:  I think you should just make sure that
 8    the record contains conventionally filed clips for Government's
 9    1 and 2.
10              MR. PORTER:  Yes.
11              And I have a copy on top of that for Your Honor, and
12    then I have the version that I'm going to conventionally file
13    with the clerk's office.
14              THE COURT:  And then for the paper exhibits, those,
15    were they attached to your actual motion?
16              MR. PORTER:  They were attached to my motion and I
17    prepared an exhibit list and brought them today.  My intent was
18    to, after the hearing, file the exhibit list with the
19    attachments, again, to clarify exactly what was admitted at
20    this hearing.
21              THE COURT:  Have you discussed with Ms. Nash the
22    possibility of any stipulations and potentially conferred about
23    what is actually in dispute in terms of intent in this case,
24    given sort of the odd set of facts that we are presented with?
25              MR. PORTER:  Judge, my understanding is that the
```

1    defense objects to the entire two portions that I played for

2    the Court.  That's my understanding.

3              I don't think the defendant is going to stipulate

4    that the reason that he did it is because he had escaped from

5    prison, and he needed to assume another identity to avoid

6    detection by law enforcement.  I also think that there are some

7    inaccuracies, more misstatements in his recorded confession, it

8    makes the prior passport applications relevant, because one of

9    the things that he says is, hey, I made a mistake 40 years ago

10   in the '70s, when I lied on a document.  But that's not true,

11   he continued to lie about every decade thereafter, and most

12   recently, in 2011, he again lied, and in that passport

13   application, which wasn't that long ago, he lied about his

14   place of birth and his date of birth.

15             So I think that also makes those prior passport

16   applications relevant because it goes to show this is not a

17   one-off incident that happened in 1977.  It was the continuing

18   course of conduct on behalf of defendant to defraud the United

19   States.

20             THE COURT:  All right.  And then in terms of that

21   6-month stint in jail, that's a result of the prior escape from

22   federal prison.  Can you just explain factually why that

23   happened?

24             MR. PORTER:  Judge, honestly his records are so old

25   with respect to his convictions, I do think that that is a

```
 1    result of his escape, but there are not a lot of criminal

 2    records out there with respect to Mr. Schreck because they are

 3    so old.

 4            One thing that we do have is he does tell us at least

 5    two of his felony convictions, he filed a petition for a name

 6    change in St. Lucie County in the '80s, and he did list at

 7    least two of his prior felony convictions in there.  One of

 8    them was a federal conviction for, I believe, interstate

 9    transport of stolen goods and I believe it was out of the

10    district of Nevada, and there was a burglary conviction in

11    there.  I'm not sure if it was from Oregon or not.  I think it

12    might have been from California, but in his NCIC, there are

13    several convictions, most of them are burglary/theft type

14    crimes and I don't -- I'm not trying to admit the nature of any

15    of his criminal convictions at trial.

16            And then he has the federal conviction that appears

17    to be for interstate transport of stolen goods, but there is

18    not a great record regarding how long he was in, you know,

19    state or federal prison, and I've tried to get those records

20    and the responses I got back was that it is due to their age.

21            THE COURT:  But in terms of what he talks about in

22    the recording about the more recent 6-month stint in --

23            MR. PORTER:  In Miami?

24            THE COURT:  -- in Miami --

25            MR. PORTER:  I believe that was related to his escape
```

```
 1    on his federal charges.  I can't think of any other reason,

 2    what else that would be related to, if he spent time in a

 3    federal facility in Miami.  But I wasn't able -- I looked up on

 4    the docket, I wasn't able to get records from our district for

 5    that.  I did find, believe it or not, a newspaper clipping from

 6    the early '80s, I can't remember the exact year, that actually

 7    talked about it.

 8              So I think that -- I sent that in discovery to

 9    Ms. Nash, so I do believe it happened, I just -- we don't have

10    records to substantiate it.

11              THE COURT:  All right.  Thank you.

12              Ms. Nash?

13              MS. NASH:  Thank you, Your Honor.

14              Your Honor, just for a point of clarification,

15    Mr. Schreck did not escape from federal prison, he actually

16    escaped from Oregon state prison in 1977.

17              THE COURT:  So the six months that he spent in

18    custody in Miami, that was in relation to what?

19              MS. NASH:  The escape from the state prison.  He was

20    apprehended in 1983, and that was the year of the newspaper

21    article that the Government is referring to --

22              THE COURT:  Okay.

23              MS. NASH:  -- which I do have a copy of.

24              THE COURT:  Okay.  I would like to really understand

25    what is in dispute in this case, what is uncontested, is there
```

1    any actual challenge that the prior passport application that

2    was attached -- I'm sorry, that the prior passport that was

3    attached to the 2021 renewal was, in fact, fraudulent, and that

4    the certification of the 2021 renewal was necessarily false as

5    well, because it certified to the truth of something that was

6    not true?

7            MR. PORTER:  So, Your Honor, the one thing that we

8    are -- that I will agree with the Government with, in the

9    Government's motion in limine, they had a footnote where they

10   stated that they are not seeking to admit the nature of the

11   criminal history, we do agree with that.  But as far as the

12   interview as well as the passports, we don't agree to allow

13   those to be admitted.

14           So, specifically, we don't believe that his passport

15   applications after the very first in 1977 is indicative of any

16   continued course of criminal activity, and the reason why we

17   believe that is, Your Honor, Mr. Schreck was arrested in 1983

18   for his escape from prison.  As we just heard in the interview,

19   he adopted the name and the date -- the inaccurate date of

20   birth and place of birth because he was an escaped convict, he

21   was running from law enforcement, but he was apprehended in

22   1983, so that cures all of that.

23           In 1983, there was a warrant out of Los Angeles

24   County, Los Angeles, Your Honor; however, in that warrant, they

25   are not -- they don't want to extradite.  We found out through

1   communications with the Government and the agent on that case

2   that they are not looking to extradite on that warrant.

3           THE COURT:  I just need to understand.  Are you

4   saying that you don't disagree with the admission of the 1977

5   passport?

6           MS. NASH:  No, I don't disagree, Your Honor.

7           THE COURT:  So that is probable --

8           MS. NASH:  No, I'm sorry, I do disagree with that.

9           THE COURT:  So how is it not the case, at the very

10  least, that the 2011 is relevant because that is the very

11  document that was attached to the 2021 renewal that is the

12  subject of the count; and without the 2021 false passport, it

13  is not possible to prove Count 2 because that's the exact

14  certification that is being made?

15          MS. NASH:  Your Honor, can I ask a question for

16  clarification?  When you say the 2011 document, are you

17  referring to the actual passport that was issued or the

18  application?

19          THE COURT:  Well, both, because -- both.  I mean, it

20  goes hand-in-hand.  You have a false fraudulent passport that

21  is certified under the 2021 renewal and also sent in physically

22  to obtain the 2021 renewal.  So how is that not just a very --

23  the very part of the crime itself that's charged?

24          MS. NASH:  Well, Your Honor, the 2021 -- I'm sorry,

25  the 2011 passport itself is not a fraudulent document.  It was

1   validly issued by the Department of State.  It included a false

2   statement on it, but it is not a fraudulent document that

3   somebody created that he paid for.

4           THE COURT:  It is certainly fraudulent, Ms. Nash.  It

5   was obtained by fraud, there can be no reasonable dispute about

6   that.

7           MS. NASH:  I forgot the second part of your question,

8   Your Honor, I apologize.

9           THE COURT:  I just want to understand, in trying to

10  determine whether something is properly admitted either as an

11  extrinsically intertwined or 404(b), I need to understand what

12  is actually contested in this case.  Are you admitting that the

13  2011 passport contained false statements?

14          MS. NASH:  That part, yes, Your Honor.

15          THE COURT:  Are you admitting, therefore, that the

16  certification on the 2021 renewal that says everything I have

17  attached is true is also false?

18          MS. NASH:  No, Your Honor.

19          THE COURT:  Okay.  All right.

20          MS. NASH:  That goes back to my statement about the

21  passport that he received was issued by the Department of State

22  because the statement says "false documents" so --

23          THE COURT:  You don't agree that the certification

24  constitutes a false statement under 50 and 42; is that right?

25          MS. NASH:  Yes, Your Honor.

December 12, 2023.

```
 1                    THE COURT:  Okay.

 2              And that is why again?

 3              MS. NASH:  Because the passport that he attached,

 4    that supporting document that he attached, Your Honor, is a

 5    document that was issued by the Department of State; and so

 6    when we are talking about the certifications, the certification

 7    talks about fraudulent documents, not the statements.

 8              THE COURT:  So I guess your theory is because it was

 9    actually issued --

10              MS. NASH:  Yes, Your Honor.

11              THE COURT:  -- even though doesn't contained false

12    statements?

13              MS. NASH:  Yes, Your Honor.

14              THE COURT:  When he then certifies in 2021 that he is

15    not lying about the attachments, that's not a lie because he

16    actually received a, quote, issued passport even if it was

17    based on false statements?

18              MS. NASH:  Yes, Your Honor.

19              THE COURT:  So then your argument for why the other

20    two passports shouldn't come, the 1977, that started this whole

21    thing with the fake name and the 1999.  Why don't you think

22    those are properly admitted?

23              MS. NASH:  Your Honor, for the 1970 -- actually --

24    well, for both of them, Your Honor.  For both of the passport

25    applications, Your Honor, the Government is stating that, you
```

```
1    know, they are admissible.  They are not subject to 404(b)

2    because they are inexplicably intertwined with the offenses

3    charged, and they help complete a story or show the motive,

4    Your Honor.

5              For the 1978 passport application, as we stated

6    before, the Government is arguing that he was trying to hide

7    from law enforcement because he escaped from prison.  Your

8    Honor, in 1983, law enforcement found him.  We heard in the

9    interview clip also that Mr. Schreck changed his life around.

10   He has not been arrested besides him being apprehended for the

11   escape.  He has not been arrested since 1977.  He operated a

12   successful business in Port St. Lucie for years.

13             As we heard in the interview clip, when he waited the

14   six months in the Miami-Dade Detention Center, he had quite a

15   bit of law enforcement officers who advocated --

16             THE COURT:  Okay.  But what is the legal relevance to

17   any of this?

18             MS. NASH:  So, Your Honor, our argument is that it

19   does not show motive or intent to hide from law enforcement

20   because law enforcement already apprehended him.  He changed

21   his life.  There was no need to no longer hide from law

22   enforcement after 1983.

23             THE COURT:  All right.  So let me just ask you:  Is

24   it uncontested, for purposes of Counts 1 and 2?  Or maybe I

25   should say it the other way around.  Is it in dispute that the
```

```
 1    defendant willfully and knowingly made a false statement in an

 2    application for a passport?  Is that still in dispute?

 3              MS. NASH:  Can we break it down by passport, if

 4    that's okay.

 5              THE COURT:  I'm just looking at the indictment

 6    because I need to focus on the charges.  So for Count 1, is it

 7    in dispute that on or about April 29, 2021, the defendant

 8    willfully and knowingly used or attempted to use a passport

 9    that was secured by reason of a false statement?

10              MS. NASH:  Yes, Your Honor.

11              THE COURT:  Okay.  So by contesting that, of course,

12    which you are entitled to do, we put the matter of intent at

13    issue, okay, which forces the Government to prove his intent,

14    his criminal intent to commit Counts 1 and 2.  So then why

15    would it not be perfectly appropriate to use the prior false

16    statements that are part and parcel of Counts 1 and 2, at least

17    insofar as the 2011 passport is concerned to prove the

18    essential elements of Count 1 and 2.

19              MS. NASH:  That's why I mentioned, can we go by

20    passport application years, Your Honor.  So for the 2011

21    passport, Your Honor, at this -- at this point, we don't

22    necessarily dispute that being the issue.  It is more so

23    the '78, somewhat the '99, but not the 2011 passport.

24              THE COURT:  So is there any objection to admission of

25    Government's Exhibit 3, which is the 1978 passport application?
```

December 12, 2023.

```
 1              MS. NASH:  Yes.  We do object to that.

 2              THE COURT:  Okay.  I'm sorry, I thought you just said

 3   you did not object to Government's 3.

 4              MS. NASH:  No, I said the 2011 passport.

 5              THE COURT:  Oh, my fault.  I'm using the wrong years.

 6   Then I should say, more correctly, Government's 5, that's the

 7   2011 passport.

 8              MS. NASH:  So I do not object to that one.

 9              THE COURT:  Now, Government's 6, is there an

10   objection to that?

11              MS. NASH:  No, Your Honor.

12              THE COURT:  So your challenge, your issue is with the

13   1978 and 1999?

14              MS. NASH:  Correct, Your Honor.

15              THE COURT:  And again -- crystalize your argument for

16   me again why you think those are inadmissible.

17              MS. NASH:  All right.  So for 1978, the Government

18   argues that it goes to show motive.  It shows knowledge and

19   intent; and the Government is hypothesizing that the intent is

20   that Mr. Schreck was on the run from law enforcement.

21              In 1978, Your Honor, he was; but in 1983, he was

22   apprehended, so he is no longer on the run from law enforcement

23   after 1983, Your Honor.  As a matter --

24              THE COURT:  But is that factually correct?  Isn't

25   there still an outstanding warrant of some kind out there?
```

December 12, 2023.

```
 1              You might be able to make this argument to the jury
 2     that he was already apprehended and had secured everything, but
 3     that seems perhaps it is not totally settled.
 4              MS. NASH:  Well, I say "we," but I'm sorry,
 5     Mr. Schreck didn't know there was a warrant out.  As a matter
 6     of fact, he has traveled in California since then and has not
 7     been apprehended.  He's actually left so -- and even with that
 8     warrant -- it is an extremely old warrant.  I believe it is
 9     1967.  I think it is 1967, and they are not extraditing on the
10     warrant.  He was unaware that that warrant even existed, Your
11     Honor.
12              THE COURT:  Okay.  And then the reason why you object
13     to the concessions that were taken recently, that was taken
14     recently, and that discusses the very charges here.  Explain to
15     me the legal basis to exclude that.
16              MS. NASH:  So, Your Honor, I do believe that the
17     interview itself is very prejudicial and it outweighs any
18     probative value that it could bring.  The reason being is that
19     it -- I believe the jury, if they hear those statements and
20     hear, you know, that Mr. Schreck is saying, you know, he was
21     not the same person that he was 20, 30, 40, 50 years ago, that
22     he was an escaped convict, that he didn't really care at that
23     time; that, you know, this was illegal.  I don't think the jury
24     would be able to separate the fact that he has been a changed
25     man since at least a year before he met his wife.  We hear the
```

December 12, 2023.

```
 1    wife in the background of the interview saying by the time they

 2    got married, he was already on the up-and-up, so I don't

 3    believe, even as legal counsel or, you know, professionals of

 4    the court, we are having a hard time kind of separating the

 5    facts and the issues of it.  So I don't believe that a jury

 6    would be able to separate, and they would just automatically

 7    think that he continued this action because he was trying to

 8    evade the law which he wasn't.

 9            THE COURT:  I think, if anything, the opposite is the

10    case, frankly.  It seems like he is being quite honest with the

11    agents almost immediately explaining, you know, what he was

12    doing but admitting fully to all of many other lies he had

13    made.  So I'm not sure that the jury would be so disadvantaged

14    in its ability to see through these issues.

15            All right.  Any other argument, Ms. Nash?

16            MS. NASH:  Just to kind of round it out and hopefully

17    a little clearer, Your Honor -- actually, no, Your Honor.  No

18    further argument, Your Honor.

19            THE COURT:  Are there any portions of the clips that

20    have been played, one and two, that you do not challenge the

21    admission of?  Like is there anything in particular about the

22    clips that you have a problem with?  Have you conferred with

23    Mr. Porter about maybe coming to an agreement potentially of

24    narrower clips one and two?  I just want to understand the

25    Defense position.
```

December 12, 2023.

```
 1              MS. NASH:  Mr. Porter and I have not conferred about
 2    the clips, Your Honor.
 3              I do have -- I do have an issue with allowing the
 4    jury to hear how Mr. Schreck, in 1977, did not care about the
 5    legality of using somebody else's name, his criminal history,
 6    and the length of time that he served in prison at that time
 7    and escaping from the prison, and I believe that was clip
 8    two -- clip one -- wait.
 9              THE COURT:  I think maybe clip two had a few more of
10    those references.
11              MS. NASH:  I believe it is clip two.
12              THE COURT:  Okay.  Thank you, Ms. Nash.  I will come
13    back to you if I need any further help with this.
14              Mr. Porter, I'll give you a final chance to present
15    any arguments, and it is your motion; and if you could do so
16    mindful of my discussion with Ms. Nash, that would help.
17              MR. PORTER:  Just a couple points that I would like
18    to add.  First, Judge, I just want to clarify that the United
19    States' motion is twofold.  First, the United States is arguing
20    that the evidence that I'm seeking to admit is inextricably
21    intertwined with the charges contained in the indictment.
22    Alternatively, I'm arguing that that evidence should be
23    admitted pursuant to Rule 404(b).  I think with respect --
24              THE COURT:  What is your 404(b) purpose for the 1978
25    and the 1999?
```

```
 1          MR. PORTER:  Modus operandi, which I think is clear.
 2    He does the same exact thing and makes the same exact lies and
 3    misstatements over and over again.  They are identical.  So you
 4    have essentially the identical crime being committed over and
 5    over again, and the motive for it is that first 1977 passport
 6    application, that is so critical, Judge, because that is the
 7    one that required him to make the most false statements.  He
 8    had to lie about his name.  He had to lie about his date of
 9    birth.  He had to lie about his place of birth.  He had to lie
10    about his parents' identity.  He had to submit a false birth
11    certificate in support of that application as proof of his
12    identity.  Once he obtained that, in his new passport
13    applications, he didn't have to lie as much anymore because now
14    he had a fraudulent passport that he could use to prove his
15    identity.  So he didn't have to go back and obtain a false
16    birth certificate or other false identification documents.  And
17    since he put all of that information in his first passport
18    application, he didn't have to lie about who his parents were
19    anymore.  So the amount of lies --
20          THE COURT:  What do you say about Ms. Nash's point
21    that because he was apprehended, I guess in the late '70s, if I
22    remember correctly, that really he had no reason to, you know,
23    be afraid of law enforcement because that arrest, that
24    apprehension cures his desire to hide?
25          MR. PORTER:  So first, I disagree because he did have
```

```
 1   active warrants out for his arrest, so I do think that there is

 2   still a motive.  He had a long criminal history to avoid

 3   detection by law enforcement, but that's not the United States'

 4   only theory as to why Mr. Schreck assumed a new identity, and I

 5   think his confession even bears out that it was more than just

 6   hiding from law enforcement.  He needed to be able to get a

 7   job.  He wanted to be able to move around the country freely

 8   without not just law enforcement, any officials finding out who

 9   he was.

10            Any time he goes in to apply for a job, if he tells

11   them who he really is, it is going to come back that he is a

12   multi-convicted felon, so he needed that new identity for more

13   than one purpose, not just to avoid detection by law

14   enforcement but so that he could be someone who he was not, so

15   he could start a new life.

16            And I do think, I don't know how the trial is going

17   to proceed, but one thing that I wanted to throw out there, I

18   think that Mr. Schreck needs to be careful about how he

19   categorizes his use of that fraudulent 2011 passport.  Judge,

20   each time that he used that passport -- and I know that he used

21   it to travel because I have his travel records.  Each time that

22   he used that 2011 fraudulent passport, it constitutes

23   aggravated identity theft.  And he did commit those crimes

24   within the five-year statute of limitations.  I did not charge

25   it because aggravated identity theft comes with a two-year
```

1    mandatory minimum.

2          So I'm just throwing that out there as a warning

3    because I don't know how the testimony is going to proceed at

4    trial, but I heard Ms. Nash say that Mr. Schreck did recently

5    travel with that passport.  He did, and he did so within the

6    last five years.  Each time that he does that, he is using it,

7    and it constitutes aggravated identity theft which has a

8    two-year mandatory minimum.  So I think we need to be careful

9    with that.

10          But to answer Your Honor's question as far as the

11    motive, Mr. Schreck's motive --

12          MS. NASH:  Objection; real quick, Your Honor -- I'm

13    sorry -- that was an inaccurate statement of what Counsel said.

14    I did not state Mr. Schreck traveled recently.  I said he has

15    traveled to California.  I did not put a timestamp on that,

16    Your Honor, so I wanted to clarify that for the Court.

17          THE COURT:  I'll note that clarification.

18          MR. PORTER:  The Government's theory is twofold as to

19    why Mr. Schreck committed this crime.  It was not just to avoid

20    detection by law enforcement.  He wanted a new identity.  It is

21    no secret that people with substantial criminal histories have

22    trouble obtaining jobs.  They have trouble moving around in

23    society in ways that those that don't have those criminal

24    histories don't have those same types of problems.

25          Mr. Schreck did not want anyone to know or find out

December 12, 2023.

1    about his criminal past.  That's part of why he needed a new

2    identity.  Yes, law enforcement was part of the overall people

3    who he did not want to be able to find him or know about his

4    criminal past, but it was not just to avoid detection by law

5    enforcement.  He wanted to assume a new identity to shed his

6    old identity and his past entirely.  So that's why it is a

7    continuing offense, Judge.  It goes to his intent.  It goes to

8    his modus operandi.  It goes to his identity, and it goes to

9    his motive.

10         And again, in fraud cases, motive is usually the most

11   difficult and the most important element the Government has to

12   prove at trial.  With fraud cases, it all comes down to the

13   mens rea because, oftentimes, the defense in a fraud case is,

14   "It was a simple mistake, I didn't have the requisite intent to

15   commit the crime."  That's why this evidence is so important in

16   cases like this where the jury is going to be given an

17   instruction that the defendant needed to act.

18         THE COURT:  I have a quick question.

19         So on the certification for the 2021 which is

20   Government's 6, I'm looking at Government's 6 --

21         MR. PORTER:  Judge, I actually have a copy of -- a

22   clear copy, if you want to see what the exact -- do you want to

23   see the exact language?

24         THE COURT:  I want to understand this position that

25   he didn't think he was maybe lying when he certified because it

```
 1   referenced documents, not statements.
 2          MR. PORTER:  So I have it on the ELMO, and this is
 3   the form that corresponds to the date and the year of
 4   Mr. Schreck's application.  So essentially, it is the same one,
 5   and I think number 3.  I don't know if you can see where I put
 6   the yellow spot.
 7          THE COURT:  Yes.
 8          MR. PORTER:  So it says, "I have not knowingly and
 9   willfully made false statements or included false documents in
10   support of this application."
11          I submit that his 2011 passport is a false document.
12          THE COURT:  Despite it being issued by the Department
13   of State?
14          MR. PORTER:  It was issued under the auspice of
15   fraud.
16          THE COURT:  Correct.
17          MR. PORTER:  You cannot fraudulently obtain a
18   document and then say, "because they gave it to me, it is no
19   longer fraudulent."
20          THE COURT:  That seems to make sense.  All right.
21          MR. PORTER:  I think that's it, Judge.
22          I wanted to clarify.  I think, as far as the
23   inextricably intertwined argument, it is very clear with
24   respect to the 2011 passport application.  I don't think you
25   can separate that from the charges contained in the indictment.
```

December 12, 2023.

```
 1    So I do think that that passport application is inextricably

 2    intertwined with the charges contained in the indictment.  I

 3    think that the 1997 and 1999 are, as well; but, if they are

 4    not, I think that there is a strong basis for their admission

 5    under Rule 404(b).  I set forth in my motion all of the

 6    reasons, so I identify each 404(b) basis that I think warrants

 7    the admission of those documents:  Modus operandi, intent,

 8    identity, motive.

 9         I also think with respect to the recordings, I think

10    they are inextricably intertwined.  I think it is difficult to

11    separate a defendant's confession from the charges contained in

12    the indictment, and I think that that's what those recordings

13    are.  They are the defendant's confession, but even if the

14    Court were to say that they are not necessarily inextricably

15    intertwined, I think, again, they clearly go to motive.  They

16    also go to identity.  He admits who he is.  He admits his

17    correct date of birth.  He admits his correct place of birth.

18    They go to his motive.

19         He explains exactly why he did it and how he did it

20    and how long he did it, and they also go to modus operandi.  So

21    I think as far as the recorded interviews are concerned, even

22    if they are not inextricably intertwined, which I think they

23    are, I think there is valid reasons under 404(b) to admit them.

24    And I think that any prejudice can be cured by the Court giving

25    a limited instruction, and you can give it both at the time
```

1   that the evidence is admitted.  You can also give it when you

2   are instructing the jury at the end of the case.

3                    THE COURT:  Okay.

4                    Just so I understand the full context, I know you

5   said that clips one and two in total amount to how many

6   minutes?

7                    MR. PORTER:  Each one is approximately six minutes.

8                    THE COURT:  But the full interview is how long?

9                    MR. PORTER:  Twenty-two minutes, and I'm not --

10                   THE COURT:  So you took off about ten minutes?

11                   MR. PORTER:  Yes, and I tried to take out --

12                   THE COURT:  Hold on, hold on.  The ten minutes that

13  you took off, what sort of irrelevant things were in those ten

14  minutes?

15                   MR. PORTER:  I can play it for you, if you want,

16  Judge.  I just attempted to take out as much extraneous

17  information so that I could limit the portions of the recording

18  to matters that are relevant to the charges in the indictment.

19  And so I think that the clips that I generated, they are

20  essentially the defendant's confession, and that's what they

21  talk about and that's what they concern.

22                   I'm happy, if the Court wants, I can play the entire

23  21-minute interview, but I tried to just focus on the parts

24  where the defendant is essentially admitting essential elements

25  of the offense, and I think that's what those two recordings

```
 1   do.

 2            THE COURT:  Ms. Nash?

 3            MS. NASH:  Your Honor, if the Court will allow me to,

 4   and if the Government agrees, I can actually give a summary of

 5   the other ten minutes.

 6            THE COURT:  Yes, that would be helpful.

 7            MS. NASH:  So in the other ten minutes, at one point,

 8   Mr. Schreck actually leaves the room, and it's his wife talking

 9   to the agents.  The family actually had a son who died in

10   service, serving our country, so they talk about that.  They

11   talk about the home that they received, which is a Gold Star

12   home, because of their son's service and his untimely death

13   while serving our country.  Then you have another son who is

14   present who just asked some questions, so we agree that that

15   part is irrelevant.

16            THE COURT:  Okay.  All right.

17            MR. PORTER:  I think there was some more about his

18   criminal history in there, too, but --

19            THE COURT:  All right.  I would like to listen to the

20   full clip, the 22 minutes.  Is that available in the clips?

21            MR. PORTER:  I can play it for you now, Judge, if you

22   want.

23            THE COURT:  I don't think it is necessary to extend

24   this hearing for purposes of hearing those additional ten

25   minutes, in light of the proffer given by Ms. Nash.  I would
```

1    just, in chambers, like to listen to the whole thing.

2              Do you have it in its entirety right now?

3              MR. PORTER:  I don't, but I can get it by the end of

4    the day.  I do have it, I just don't have it on a flash drive.

5    I have it on my laptop.

6              THE COURT:  Okay.  And another thing I've noticed,

7    and I'm not blaming you, but the flash drives that we receive

8    from the U.S. Attorney's Office, we have a lot of problems with

9    them.  Whenever we -- Ms. Casissi, I can speak to this issue

10   more; but, in essence, it doesn't connect very well to our

11   equipment, and so we may get lucky and it might work once, but

12   then when we try to replay it, it becomes very difficult.  I

13   don't know if it is an issue with the flimsiness of those

14   little white cards that you all use now or what; but, if there

15   is a possibility to get a more secure or stable or sturdy flash

16   drive, that would help.

17             MR. PORTER:  Judge, I can put it on a thumb drive

18   instead of a flash drive, if that might help.  I can also

19   assist Ms. Casissi, when I deliver it and make sure that it

20   works.

21             THE COURT:  The issues that we have had in the past

22   is we get it once and we are thinking it as all fine, and then

23   in the future, if we want to replay it, it is very finnicky and

24   hard to locate again.  So if you can do the flash drive option,

25   that would be better.

December 12, 2023.

```
 1            That's all I have for now.  This is an interesting

 2     case.

 3            I also know there is a pending motion to dismiss the

 4     indictment.  Having had this hearing, I think I am

 5     understanding that motion a bit more.  The Government's

 6     response is due, I think, on the 12th -- oh, no, the 20th.

 7            MR. PORTER:  I think it is due next Friday, but I

 8     might have miscalculated.  I do intend to respond to it, I just

 9     haven't made it that far yet.

10            THE COURT:  If there is a need for an additional

11     hearing on that motion, perhaps there is no longer a need for

12     that, given our lengthy discussion today, then please make your

13     position known in your opposition.

14            And then, of course, Ms. Nash, you will have the

15     standard seven days to reply.  Please make a note about the

16     hearing issue in the reply, too.

17            MS. NASH:  Will do, Your Honor.  Thank you.

18            THE COURT:  Thank you all, the Court is in recess.

19            THE COURTROOM DEPUTY:  All rise.

20       (PROCEEDINGS ADJOURNED AT 10:46 A.M.)

21

22

23

24

25
```

December 12, 2023.

```
1              C-E-R-T-I-F-I-C-A-T-E

2            I hereby certify that the foregoing is

3       an accurate transcription and proceedings in the

4       above-entitled matter.

5
     7/10/2024                /s/DIANE MILLER
6     DATE                    DIANE MILLER, RMR, CRR, CRC
                              Official Court Reporter
7                             United States District Court
                              101 South U.S. Highway 1
8                             Fort Pierce, FL  34950
                              772-467-2337
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

December 12, 2023.

MR. PORTER: [61]

MS. NASH: [37] 2/11 21/13 21/19 21/23 23/6 23/8 23/15 23/24 24/7 24/14 24/18 24/20 24/25 25/3 25/10 25/13 25/18 25/23 26/18 27/3 27/10 27/19 28/11 28/4 28/8 28/11 28/14 28/17 29/4 29/16 30/16 31/1 31/11 34/12 39/3 39/7 41/17

THE COURT: [96]

THE COURTROOM DEPUTY: [2] 2/4 41/19

'

'70s [4] 16/3 17/19 19/10 32/21
'78 [1] 27/23
'80s [3] 16/3 20/6 21/6
'99 [1] 27/23

/

/s/DIANE [1] 42/5

1

101 [2] 1/14 42/7
109 [1] 1/18
10:46 [1] 41/20
12 [2] 1/4 2/18
12th [1] 41/6
1542 [4] 3/7 3/10 3/10 3/19
18 [3] 3/7 3/9 11/24
1967 [2] 29/9 29/9
1970 [1] 25/23
1977 [14] 8/1 8/17 11/13 11/15 11/25 17/3 19/17 21/16 22/15 23/4 25/20 26/11 31/4 32/5
1978 [6] 26/5

27/25 28/13 28/17 28/21 31/24
1983 [8] 21/20 22/17 22/22 22/23 26/8 26/22 28/21 28/23
1997 [1] 37/3
1999 [7] 9/5 9/9 9/12 25/21 28/13 31/25 37/3

2

20 [1] 29/21
2011 [20] 4/13 4/13 6/5 9/19 10/24 12/7 19/12 23/10 23/16 23/25 24/13 27/17 27/20 27/23 28/4 28/7 33/19 33/22 36/11 36/24
2021 [23] 4/15 6/8 6/9 6/10 6/11 6/22 6/25 10/5 10/7 11/6 16/12 16/13 22/3 22/4 23/11 23/12 23/21 23/22 23/24 24/16 25/14 27/7 35/19
2023 [1] 1/4
2024 [1] 42/5
20th [1] 41/6
21-minute [1] 38/23
22 [2] 13/6 39/20
23-14042-Criminal [1] 2/5
23-14042-CRIMINAL-CANNON [1] 1/2
2337 [1] 42/8
29 [1] 27/7
2nd [1] 1/18

3

30 [1] 29/21
3100 [1] 1/14
34950 [3] 1/15 1/18 42/8

4

40 [3] 17/17 19/9 29/21

404 [13] 7/14 7/20 11/3 13/16 13/18 13/19 24/11 26/1 31/23 31/24 37/5 37/6 37/23
42 [1] 24/24
49 [1] 1/7

5

50 [2] 24/24 29/21

6

6-minute [1] 13/11
6-month [2] 19/21 20/22

7

7/10/2024 [1] 42/5
772-467-2337 [1] 42/8

A

A.M [1] 41/20
ability [4] 17/21 17/22 17/24 30/14
above [1] 42/4
above-entitled [1] 42/4
absconded [1] 12/20
Absolutely [1] 3/3
access [2] 11/25 13/3
accident [2] 11/25 15/1
according [1] 10/17
act [1] 35/17
action [1] 30/7
activity [1] 22/16
add [1] 31/18
added [1] 4/24
ADJOURNED [1] 41/20
admissible [1] 26/1
admission [6] 13/23 23/4 27/24 30/21 37/4 37/7
admissions [2] 11/14 12/7
admit [11] 7/15 7/24 8/24 11/3

11/3 13/10 16/6 20/14 22/10 31/20 37/23
admits [9] 8/24 9/1 12/9 12/10 12/13 17/6 37/16 37/16 37/17
admitted [7] 13/1 18/19 22/13 24/10 25/22 31/23 38/1
admitting [6] 14/7 14/13 24/12 24/15 30/12 38/24
adopt [1] 12/25
adopted [1] 22/19
advocated [1] 26/15
AFPD [1] 1/17
afraid [1] 32/23
age [1] 20/20
agency [8] 5/15 7/8 9/11 11/7 16/5 16/17 16/22 17/11
agent [1] 23/1
agents [4] 12/21 13/5 30/11 39/9
aggravated [3] 33/23 33/25 34/7
agreement [1] 30/23
AILEEN [1] 1/10
AISHA [2] 1/17 2/11
allegations [2] 2/25 3/12
allow [2] 22/12 39/3
allowed [1] 15/7
allowing [1] 31/3
almost [2] 14/22 30/11
alone [1] 6/8
alternative [1] 13/18
Alternatively [1] 31/22
amassed [1] 11/17
AMERICA [2] 1/3 2/4
amount [2] 32/19 38/5
Angeles [2] 22/23

22/24
answer [1] 34/10
anymore [2] 32/13 32/19
apologize [1] 24/8
appearance [1] 2/6
APPEARANCES [1] 1/12
application [40] 3/9 3/13 3/21 4/1 4/4 4/10 4/12 4/16 5/8 5/25 6/4 8/2 8/2 8/11 8/12 9/6 9/13 9/21 9/23 10/8 10/21 10/23 11/8 17/2 17/15 17/24 19/13 22/1 23/18 26/5 27/2 27/20 27/25 32/6 32/11 32/18 36/4 36/10 36/24 37/1
applications [13] 5/25 7/10 7/24 11/1 11/10 11/12 12/8 12/10 19/8 19/16 22/15 25/25 32/13
applied [1] 11/20
apply [1] 33/10
apprehended [8] 21/20 22/21 26/10 26/20 28/22 29/2 29/7 32/21
apprehension [1] 32/24
April 29 [1] 27/7
argues [1] 28/18
arguing [3] 26/6 31/19 31/22
argument [11] 2/17 13/15 13/18 15/9 25/19 26/18 28/15 29/1 30/15 30/18 36/23
arguments [1] 31/15
arrest [5] 16/4 16/8 16/23 32/23 33/1
arrested [3] 22/17 26/10 26/11

**A**

**article [1]** 21/21
**assist [1]** 40/19
**Assistant [1]** 2/12
**assume [3]** 17/19 19/5 35/5
**assumed [2]** 11/13 33/4
**attached [13]** 6/3 6/17 6/18 6/20 10/22 18/15 18/16 22/2 22/3 23/11 24/17 25/3 25/4
**attaching [2]** 6/10 16/20
**attachment [2]** 14/4 14/5
**attachments [3]** 6/13 18/19 25/15
**attempt [1]** 5/13
**attempted [2]** 27/8 38/16
**Attorney [1]** 1/13
**Attorney's [1]** 40/8
**Audio [2]** 15/17 15/21
**AUSA [1]** 1/13
**auspice [1]** 36/14
**authority [1]** 3/22
**automatically [1]** 30/6
**avoid [8]** 12/5 12/12 17/22 19/5 33/2 33/13 34/19 35/4

**B**

**background [2]** 7/23 30/1
**basis [3]** 29/15 37/4 37/6
**bears [1]** 33/5
**becomes [2]** 6/9 40/12
**besides [1]** 26/10
**biographical [1]** 12/1
**birth [32]** 4/14 4/14 4/18 4/18 6/23 6/23 8/3 8/4 8/10 9/13 9/14 9/22 9/22 10/9

10/10 12/2 12/2 12/3 12/9 12/14 16/25 17/1 19/14 19/14 22/20 22/20 32/9 32/9 32/10 32/16 37/17 37/17
**blaming [1]** 40/7
**borne [1]** 7/14
**burglary [2]** 20/10 20/13
**burglary/theft [1]** 20/13
**business [1]** 26/12

**C**

**C-E-R-T-I-F-I-C-A-T-E [1]** 41/21
**California [4]** 16/9 20/12 29/6 34/15
**CANNON [2]** 1/2 1/10
**cards [1]** 40/14
**careful [2]** 33/18 34/8
**Casissi [2]** 40/9 40/19
**categorizes [1]** 33/19
**caught [1]** 12/17
**Center [1]** 26/14
**certificate [5]** 8/11 12/3 12/15 32/11 32/16
**certification [11]** 6/17 6/19 6/25 7/2 10/20 22/4 23/14 24/16 24/23 25/6 35/19
**certifications [1]** 25/6
**certified [5]** 6/13 17/16 22/5 23/21 35/25
**certifies [1]** 25/14
**certify [4]** 6/1 6/2 10/22 42/2
**certifying [1]** 10/16
**cetera [1]** 6/23
**challenge [3]** 22/1 28/12 30/20

**chambers [1]** 40/1
**chance [1]** 31/14
**charge [2]** 3/11 33/24
**charged [3]** 3/4 23/23 26/3
**charges [13]** 3/5 3/8 4/8 14/1 14/11 21/1 27/6 29/14 31/21 36/25 37/2 37/11 38/18
**checkpoint [1]** 5/2
**circumstances [1]** 12/22
**claim [1]** 7/13
**clarification [3]** 21/14 23/16 34/17
**clarify [4]** 18/19 31/18 34/16 36/22
**clause [2]** 3/18 3/20
**clauses [2]** 3/10 3/16
**clean [3]** 6/11 6/15 6/21
**clear [5]** 15/16 18/5 32/1 35/22 36/23
**clearer [1]** 30/17
**clerk's [1]** 18/13
**clip [10]** 15/19 15/20 18/3 26/9 26/13 31/7 31/8 31/9 31/11 39/20
**clipping [1]** 21/5
**clips [12]** 13/8 13/10 13/11 15/11 18/8 30/19 30/22 30/24 31/2 38/5 38/19 39/20
**Code [2]** 3/7 3/9
**commit [3]** 27/14 33/23 35/15
**committed [2]** 32/4 34/19
**communications [1]** 23/1
**complete [1]** 26/3
**computer [1]** 10/1
**concern [1]** 38/21

**concessions [1]** 29/13
**conduct [1]** 19/18
**conferred [3]** 18/22 30/22 31/1
**confess [1]** 13/11
**confesses [1]** 14/9
**confession [10]** 13/22 14/6 14/10 14/14 15/3 19/7 33/5 37/11 37/13 38/20
**confirms [2]** 12/7 12/9
**confronted [1]** 17/3
**connect [1]** 40/10
**constitutes [4]** 5/7 24/24 33/22 34/7
**contained [8]** 6/9 14/12 24/13 25/11 31/21 36/25 37/2 37/11
**contains [1]** 18/8
**contested [1]** 24/12
**contesting [1]** 27/11
**context [2]** 7/23 38/4
**continued [3]** 19/11 22/16 30/7
**continuing [2]** 19/17 35/7
**contrary [1]** 3/24
**conventionally [2]** 18/8 18/12
**convict [2]** 22/20 29/22
**convicted [1]** 33/12
**conviction [3]** 20/8 20/10 20/16
**convictions [6]** 11/17 19/25 20/5 20/7 20/13 20/15
**corresponds [1]** 36/3
**count [25]** 3/4 3/5 3/7 3/18 3/25 4/2 4/7 4/8 4/22 4/23

4/25 5/11 5/12 5/17 5/19 5/22 5/23 5/24 6/2 6/16 14/4 23/12 23/13 27/6 27/18
**country [1]** 33/7 39/10 39/13
**Counts [3]** 26/24 27/14 27/16
**County [2]** 20/6 22/24
**court [16]** 1/1 1/23 7/22 13/10 15/17 15/21 19/2 30/4 34/16 37/14 37/24 38/22 39/3 41/18 42/6 42/7
**CRC [1]** 42/6
**created [1]** 24/3
**crime [6]** 12/17 14/9 23/23 32/4 34/19 35/15
**crimes [3]** 12/24 20/14 33/23
**criminal [14]** 1/2 2/5 20/12 20/15 22/11 22/16 27/14 34/23 35/1 35/4 39/18
**critical [2]** 17/24 32/6
**CRR [2]** 1/23 42/6
**crystalize [1]** 28/15
**cured [1]** 37/24
**cures [2]** 22/22 32/24
**custody [1]** 21/18

**D**

**Dade [1]** 26/14
**death [3]** 12/14 13/2 39/12
**decade [1]** 19/11
**decided [1]** 17/19
**defendant [12]** 1/7 1/17 2/18 14/20 14/25 15/8 19/3 19/18 27/1 27/7 35/17 38/24
**defendant's [6]** 14/10 14/14 15/2

**D**

**defendant's... [3]** 37/11 37/13 38/20
**Defender [2]** 1/17 2/12
**defense [5]** 14/24 15/9 19/1 30/25 35/13
**defraud [1]** 19/18
**deliver [1]** 40/19
**deniability [2]** 16/14 17/9
**Department [4]** 24/1 24/21 25/5 36/12
**desire [1]** 32/24
**Despite [1]** 36/12
**details [1]** 12/17
**detection [8]** 12/5 12/12 17/22 19/6 33/3 33/13 34/20 35/4
**Detention [1]** 26/14
**diane [4]** 1/23 1/24 42/5 42/6
**died [2]** 11/24 39/9
**difficult [4]** 14/17 35/11 37/10 40/12
**Diplomatic [1]** 11/8
**disadvantaged [1]** 30/13
**disagree [4]** 23/4 23/6 23/8 32/25
**discovered [1]** 11/11
**discovery [1]** 21/8
**discussion [2]** 31/16 41/12
**dismiss [1]** 41/3
**dispute [10]** 8/5 8/7 8/13 18/23 21/25 24/5 26/25 27/2 27/7 27/22
**disputed [1]** 8/25
**distinction [1]** 5/21
**district [6]** 1/1 1/1 1/10 20/10 21/4

42/7
**docket [2]** 2/18 21/4
**document [10]** 6/18 19/10 23/11 23/16 23/25 24/2 25/4 25/5 36/11 36/18
**documents [9]** 6/17 6/19 10/22 24/22 25/7 32/16 36/1 36/9 37/7
**DSS [2]** 11/8 13/5

**E**

**early [1]** 21/6
**element [2]** 4/24 35/11
**elements [3]** 14/17 27/18 38/24
**elicited [1]** 7/8
**ELMO [2]** 10/19 36/2
**else's [3]** 12/13 17/19 31/5
**enforcement [21]** 11/21 12/5 17/23 19/6 22/21 26/7 26/8 26/15 26/19 26/20 26/22 28/20 28/22 32/23 33/3 33/6 33/8 33/14 34/20 35/2 35/5
**entirely [1]** 35/6
**entirety [1]** 40/2
**entitled [2]** 27/12 42/4
**entry [1]** 2/18
**equipment [1]** 40/11
**escape [7]** 19/21 20/1 20/25 21/15 21/19 22/18 26/11
**escaped [11]** 11/16 11/22 12/11 12/16 12/18 12/25 19/4 21/16 22/20 26/7 29/22
**escaping [1]** 31/7
**especially [1]** 14/14
**essence [1]** 40/10
**essential [2]**

27/18 38/24
**essentially [7]** 6/18 10/22 12/21 32/4 36/4 38/20 38/24
**et [1]** 6/23
**Eugene [2]** 2/13 11/24
**evade [1]** 30/8
**everybody [2]** 12/19 18/5
**everywhere [1]** 11/19
**evidence [16]** 2/23 7/14 7/19 7/21 7/25 11/2 11/4 13/25 14/14 15/2 15/8 16/7 31/20 31/22 35/15 38/1
**exclude [1]** 29/15
**excuse [1]** 8/14
**extend [1]** 39/23
**extent [1]** 15/22
**extra [1]** 3/13
**extract [1]** 13/6
**extradite [2]** 22/25 23/2
**extraditing [1]** 29/9
**extraneous [1]** 38/16
**extremely [3]** 14/15 15/5 29/8
**extrinsically [2]** 7/20 24/11

**F**

**facility [1]** 21/3
**fact [4]** 11/11 22/3 29/6 29/24
**facts [3]** 5/19 18/24 30/5
**factually [2]** 19/22 28/24
**fake [1]** 25/21
**false [45]**
**family [1]** 39/9
**fast [3]** 9/5 9/19 11/5
**fast-forward [1]** 11/5
**fault [1]** 28/5

**federal [10]** 2/12 3/2 12/19 19/22 20/8 20/16 20/19 21/1 21/3 21/15
**felon [1]** 33/12
**felony [3]** 11/17 20/5 20/7
**figure [1]** 11/21
**file [2]** 18/12 18/18
**final [1]** 31/14
**finally [1]** 10/5
**finnicky [1]** 40/23
**five-year [1]** 33/24
**FL [1]** 42/8
**flags [1]** 11/7
**flash [5]** 40/4 40/7 40/15 40/18 40/24
**flimsiness [1]** 40/13
**FLORIDA [4]** 1/1 1/6 1/15 1/18
**flsd.uscourts.gov [1]** 1/24
**focus [2]** 27/6 38/23
**footnote [1]** 22/9
**forces [1]** 27/13
**foregoing [1]** 42/2
**forgot [1]** 24/7
**form [1]** 36/3
**FORT [4]** 1/6 1/15 1/18 42/8
**foul [3]** 7/13 14/25 16/15
**fourth [1]** 10/7
**framework [1]** 7/19
**frankly [1]** 30/10
**fraud [9]** 14/15 14/16 14/22 14/24 24/5 35/10 35/12 35/13 36/15
**fraudulent [26]** 4/3 4/15 6/4 6/5 6/20 7/6 9/12 9/16 9/24 10/23 10/24 10/25 11/12 15/25 16/20 17/25 22/3 23/20 23/25 24/2

24/4 24/5 32/14 33/19 33/22 36/19
**fraudulently [1]** 36/17
**freely [1]** 33/7
**Friday [1]** 41/7

**G**

**gain [1]** 11/25
**gained [1]** 13/3
**game [1]** 17/9
**general [1]** 7/18
**generated [1]** 38/19
**gives [1]** 16/14
**Gold [1]** 39/11
**goods [2]** 20/9 20/17
**government [18]** 2/7 2/20 2/21 11/2 12/19 14/13 14/17 15/1 21/21 22/8 23/1 25/25 26/6 27/13 28/17 28/19 35/11 39/4
**Government's [12]** 2/18 13/24 18/8 22/9 27/25 28/3 28/6 28/9 34/18 35/20 35/20 41/5
**granted [1]** 8/12
**great [1]** 20/18

**H**

**happy [2]** 15/15 38/22
**harm [3]** 7/13 14/25 16/15
**Harvey [1]** 11/24
**hearing [10]** 1/9 2/21 2/23 18/18 18/20 39/24 39/24 41/4 41/11 41/16
**heart [1]** 14/22
**helpful [1]** 39/6
**hereby [1]** 42/2
**hide [4]** 26/6 26/19 26/21 32/24
**hiding [1]** 33/6
**Highway [2]** 1/14 42/7
**histories [2]**

## H

**histories... [2]** 34/21 34/24
**history [4]** 22/11 31/5 33/2 39/18
**hold [2]** 38/12 38/12
**home [2]** 39/11 39/12
**honest [1]** 30/10
**honestly [1]** 19/24
**Honor [47]**
**Honor's [1]** 34/10
**HONORABLE [1]** 1/10
**hopefully [1]** 30/16
**housekeeping [1]** 18/2
**hypothesizing [1]** 28/19

## I

**identical [2]** 32/3 32/4
**identification [2]** 9/18 32/16
**identities [1]** 8/4
**identity [28]** 5/4 9/16 9/17 9/24 9/25 11/13 11/18 11/19 12/5 12/12 13/3 17/20 19/5 32/10 32/12 32/15 33/4 33/12 33/23 33/25 34/7 34/20 35/2 35/5 35/6 35/8 37/8 37/16
**illegal [2]** 12/15 29/23
**immediately [1]** 30/11
**impression [1]** 15/6
**inaccuracies [2]** 7/9 19/7
**inaccurate [2]** 22/19 34/13
**inadmissible [2]** 13/7 28/16
**incident [1]** 19/17
**indicative [1]**
22/15
**indicted [1]** 16/7
**indictment [16]** 2/25 3/5 3/5 3/8 3/12 3/14 3/15 10/6 14/12 27/5 31/21 36/25 37/2 37/12 38/18 41/4
**induce [1]** 3/22
**inexplicably [1]** 26/2
**inextricably [9]** 13/16 13/17 14/11 31/20 36/23 37/1 37/10 37/14 37/22
**information [4]** 6/8 12/1 32/17 38/17
**insofar [1]** 27/17
**instead [1]** 40/18
**instructing [1]** 38/2
**instruction [2]** 35/17 37/25
**integral [4]** 13/25 14/3 14/10 17/21
**intend [1]** 41/8
**intent [15]** 3/21 14/16 15/1 15/2 18/17 18/23 26/19 27/12 27/13 27/14 28/19 28/19 35/7 35/14 37/7
**interrogation [1]** 16/5
**interruption [1]** 8/14
**interstate [2]** 20/8 20/17
**intertwined [12]** 7/20 13/16 13/17 14/11 24/11 26/2 31/21 36/23 37/2 37/10 37/15 37/22
**interview [23]** 2/22 7/15 8/23 9/1 11/4 11/15 12/6 13/4 14/9 15/14 15/18 15/19 17/6 17/8 17/18 22/12 22/18 26/9 26/13 29/17 30/1 38/8 38/23

**interviews [2]** 15/22 37/21
**introduce [1]** 7/20
**irrelevant [2]** 38/13 39/15
**issuance [2]** 3/22 3/24
**issue [7]** 27/13 27/22 28/12 31/3 40/9 40/13 41/16
**issued [8]** 23/17 24/1 24/21 25/5 25/9 25/16 36/12 36/14
**issues [3]** 30/5 30/14 40/21

## J

**jail [1]** 19/21
**jeopardy [1]** 16/6
**job [3]** 11/20 33/7 33/10
**jobs [1]** 34/22
**JUDGE [25]** 1/10 3/3 4/5 5/23 6/14 7/2 7/17 10/1 13/18 13/21 14/9 15/18 15/23 18/4 18/25 19/24 31/18 32/6 33/19 35/7 35/21 36/21 38/16 39/21 40/17
**jump [1]** 10/2
**jury [11]** 9/3 14/20 15/5 29/1 29/19 29/23 30/5 30/13 31/4 35/16 38/2

## K

**Kansas [1]** 11/15
**knowingly [4]** 3/20 27/1 27/8 36/8

## L

**language [1]** 35/23
**laptop [1]** 40/5
**late [1]** 32/21
**law [23]** 5/6 11/21 12/5 17/23 19/6
22/21 26/7 26/8 26/15 26/19 26/20 26/21 28/20 28/22 30/8 32/23 33/3 33/6 33/8 33/13 34/20 35/2 35/4
**laws [1]** 3/24
**learned [1]** 16/8
**legal [3]** 26/16 29/15 30/3
**legality [1]** 31/5
**legally [1]** 10/14
**length [2]** 15/20 31/6
**lengthy [1]** 41/12
**lied [13]** 4/14 8/2 8/3 8/3 8/4 9/13 9/14 9/21 9/22 12/9 19/10 19/12 19/13
**life [4]** 11/18 26/9 26/21 33/15
**light [1]** 39/25
**limine [2]** 2/18 22/9
**limit [1]** 38/17
**limitations [1]** 33/24
**limited [1]** 37/25
**list [4]** 2/20 18/17 18/18 20/6
**listen [3]** 15/11 39/19 40/1
**listening [1]** 2/24
**location [1]** 6/23
**Los [2]** 22/23 22/24
**Lucie [2]** 20/6 26/12
**lucky [1]** 40/11
**lying [2]** 25/15 35/25

## M

**mail [13]** 5/5 5/9 5/16 5/18 7/6 7/12 9/9 9/10 9/21 16/2 16/14 17/11 17/25
**man [2]** 11/24 29/25
**mandatory [2]** 34/1 34/8
**March 18 [1]**
11/24
**married [1]** 30/2
**material [1]** 3/1
**matter [4]** 27/12 28/23 29/5 42/4
**matters [1]** 38/18
**mens [1]** 35/13
**Miami [5]** 20/23 20/24 21/3 21/18 26/14
**Miami-Dade [1]** 26/14
**MICHAEL [1]** 1/13 2/8
**miller [4]** 1/23 1/24 42/5 42/6
**mindful [1]** 31/16
**minimum [2]** 34/1 34/8
**miscalculated [1]** 41/8
**misstatements [5]** 7/9 9/12 14/20 19/7 32/3
**mistake [6]** 7/13 14/25 15/7 15/10 19/9 35/14
**modus [4]** 32/1 35/8 37/7 37/20
**month [2]** 19/21 20/22
**months [2]** 21/17 26/14
**motion [11]** 1/9 2/18 18/15 18/16 22/9 31/15 31/19 37/5 41/3 41/5 41/11
**motive [12]** 26/3 26/19 28/18 32/5 33/2 34/11 34/11 35/9 35/10 37/8 37/15 37/18
**motorcycle [1]** 11/25
**Mr. [47]**
**Mr. Porter [4]** 2/24 30/23 31/1 31/14
**Mr. Sandburg's [3]** 12/1 13/2 13/3
**Mr. Schreck [33]** 2/16 4/10 4/13

## M

**Mr. Schreck... [30]** 4/23 5/4 5/24 7/5 8/1 8/24 9/6 9/15 9/20 11/6 12/3 12/6 13/11 16/1 16/8 20/2 21/15 22/17 26/9 28/20 29/5 29/20 31/4 33/4 33/18 34/4 34/14 34/19 34/25 39/8

**Mr. Schreck's [6]** 7/24 10/7 11/11 11/14 34/11 36/4

**Mr. Steven [1]** 2/12

**Ms [2]** 24/4 41/14

**Ms. [13]** 2/15 18/21 21/9 21/12 30/15 31/12 31/16 32/20 34/4 39/2 39/25 40/9 40/19

**Ms. Casissi [2]** 40/9 40/19

**Ms. Nash [10]** 2/15 18/21 21/9 21/12 30/15 31/12 31/16 34/4 39/2 39/25

**Ms. Nash's [1]** 32/20

**multi [1]** 33/12

**multi-convicted [1]** 33/12

## N

**narrower [1]** 30/24

**NASH [14]** 1/17 2/11 2/15 18/21 21/9 21/12 24/4 30/15 31/12 31/16 34/4 39/2 39/25 41/14

**Nash's [1]** 32/20

**natural [1]** 13/25

**nature [2]** 20/14 22/10

**NCIC [1]** 20/12

**necessary [1]** 39/23

**negate [1]** 15/8

**Nevada [1]** 20/10

**newspaper [4]** 11/23 13/2 21/5 21/20

**North [1]** 1/18

**noticed [1]** 40/6

**number [3]** 2/5 7/8 36/5

**numerous [1]** 13/1

## O

**obituaries [1]** 11/23

**object [4]** 28/1 28/3 28/8 29/12

**objection [3]** 27/24 28/10 34/12

**objects [1]** 19/1

**obtain [4]** 5/5 23/22 32/15 36/17

**obtained [5]** 3/6 4/9 4/11 24/5 32/12

**obtaining [1]** 34/22

**odd [1]** 18/24

**offense [2]** 35/7 38/25

**offenses [1]** 26/2

**office [5]** 1/13 1/17 16/10 18/13 40/8

**officers [1]** 26/15

**Official [2]** 1/23 42/6

**officials [1]** 33/8

**oftentimes [2]** 14/24 35/13

**oh [2]** 28/5 41/6

**one-off [1]** 19/17

**open [2]** 15/17 15/21

**operandi [4]** 32/1 35/8 37/7 37/20

**operated [1]** 26/11

**opposite [1]** 30/9

**opposition [2]** 2/19 41/13

**option [1]** 40/24

**order [2]** 5/4 14/5

**Oregon [3]** 12/18

20/11 21/16

**outstanding [3]** 16/8 16/23 28/25

**outweighs [1]** 29/17

**overall [1]** 35/2

**overview [1]** 2/25

## P

**P-R-O-C-E-E-D-I-N-G-S [1]** 1/25

**PAGES [1]** 1/7

**paper [1]** 18/14

**papers [1]** 2/22

**parcel [1]** 13/21 27/16

**parents [1]** 32/18

**parents' [2]** 8/4 32/10

**part [14]** 8/23 9/1 13/14 13/21 13/25 14/10 17/21 23/23 24/7 24/14 27/16 35/1 35/2 39/15

**parties [1]** 2/6

**passport [106]**

**passports [7]** 3/25 8/19 16/1 17/22 17/25 22/12 25/20

**pause [1]** 15/15

**pending [1]** 41/3

**people [2]** 34/21 35/2

**perfectly [1]** 27/15

**perhaps [2]** 29/3 41/11

**permissible [1]** 3/1

**person [6]** 5/15 9/6 9/7 11/7 16/10 29/21

**petition [1]** 20/5

**piece [2]** 6/25 7/3

**PIERCE [4]** 1/6 1/15 1/18 42/8

**place [12]** 4/14 4/18 8/3 9/14 9/22 10/10 12/2 17/1 19/14 22/20 32/9 37/17

**Plaintiff [2]** 1/4

1/13

**plausible [2]** 16/14 17/9

**play [7]** 9/2 10/2 13/9 15/19 38/15 38/22 39/21

**played [4]** 15/17 15/21 19/1 30/20

**point [11]** 3/16 6/21 9/11 10/13 10/15 15/15 17/8 21/14 27/21 32/20 39/7

**points [1]** 31/17

**Port [1]** 26/12

**PORTER [6]** 1/13 2/8 2/24 30/23 31/1 31/14

**position [3]** 30/25 35/24 41/13

**possibility [2]** 18/22 40/15

**potential [1]** 16/10

**potentially [2]** 18/22 30/23

**precise [1]** 14/2

**preclude [1]** 14/13

**prejudice [1]** 37/24

**prejudicial [1]** 29/17

**prepared [1]** 18/17

**present [3]** 15/7 31/14 39/14

**prevailing [1]** 5/6

**principally [1]** 13/20

**prison [15]** 11/16 12/11 12/18 12/20 12/23 19/5 19/22 20/19 21/15 21/16 21/19 22/18 26/7 31/6 31/7

**prisoner [2]** 11/22 12/16

**probable [1]** 23/7

**probative [1]** 29/18

**problem [1]** 30/22

**problematic [3]**

14/15 16/2 16/18

**problems [3]** 16/10 34/24 40/8

**proceed [2]** 33/17 34/3

**proceedings [2]** 41/20 42/3

**professionals [1]** 30/3

**proffer [1]** 39/25

**proof [7]** 5/4 9/15 9/16 9/23 9/25 11/13 32/11

**properly [2]** 24/10 25/22

**prove [9]** 14/3 14/4 14/5 14/17 23/13 27/13 27/17 32/14 35/12

**proving [1]** 14/19

**provision [1]** 4/3

**Public [2]** 1/17 2/12

**pulled [1]** 11/9

**purposes [2]** 26/24 39/24

**pursuant [1]** 31/23

## Q

**question [5]** 14/21 23/15 24/7 34/10 35/18

**questioning [1]** 12/21

**questions [3]** 7/9 18/2 39/14

**quick [2]** 34/12 35/18

**quickly [1]** 17/6

**quirky [2]** 7/16 7/17

**quote [2]** 12/24 25/16

**quote-unquote [1]** 12/24

## R

**rea [1]** 35/13

**reality [1]** 17/13

**rebuts [1]** 15/2

**recent [1]** 20/22

**recently [5]** 19/12

**R**

**recently... [4]**
29/13 29/14 34/4
34/14
**recess [1]** 41/18
**recognize [1]**
15/24
**record [2]** 18/8
20/18
**recorded [12]**
2/22 7/15 8/23
11/4 11/15 12/6
13/4 14/8 14/9
17/17 19/7 37/21
**recording [6]**
2/24 13/7 15/17
15/21 20/22 38/17
**recordings [6]**
10/2 13/22 18/5
37/9 37/12 38/25
**records [6]** 19/24
20/2 20/19 21/4
21/10 33/21
**red [1]** 11/7
**referenced [2]**
2/22 36/1
**references [1]**
31/10
**regulating [1]**
3/24
**relation [1]** 21/18
**relevance [1]**
26/16
**renew [1]** 16/1
**renewal [17]** 3/13
4/4 4/10 5/8 5/25
6/8 6/9 6/10 9/20
16/12 16/13 22/3
22/4 23/11 23/21
23/22 24/16
**replay [2]** 40/12
40/23
**reply [2]** 41/15
41/16
**Reporter [2]** 1/23
42/6
**required [3]** 16/4
16/16 32/7
**requisite [1]**
35/14
**research [1]**
11/11

**response [2]** 2/19
41/6
**responses [1]**
20/20
**result [2]** 19/21
20/1
**rise [1]** 41/19
**RMR [2]** 1/23 42/6
**room [1]** 39/8
**round [1]** 30/16
**Rule [2]** 31/23
37/5
**rules [1]** 3/2

**S**

**Sandburg [2]**
2/13 11/24
**Sandburg's [3]**
12/1 13/2 13/3
**SCHRECK [36]**
1/6 2/5 2/13 2/16
4/10 4/13 4/23 5/4
5/24 7/5 8/1 8/24
9/6 9/15 9/20 11/6
12/3 12/6 13/11
16/1 16/8 20/2
21/15 22/17 26/9
28/20 29/5 29/20
31/4 33/4 33/18
34/4 34/14 34/19
34/25 39/8
**Schreck's [6]**
7/24 10/7 11/11
11/14 34/11 36/4
**second [3]** 9/8
15/20 24/7
**secret [1]** 34/21
**Section [4]** 3/7
3/10 3/10 3/19
**secure [2]** 3/22
40/15
**secured [3]** 4/16
27/9 29/2
**Security [1]** 11/9
**seek [2]** 7/24
13/10
**seeking [5]** 11/3
11/3 16/6 22/10
31/20
**sense [1]** 36/20
**series [1]** 8/18
**serve [1]** 9/18
**served [2]** 9/24

31/6
**service [3]** 11/9
39/10 39/12
**serving [2]** 39/10
39/13
**settled [1]** 29/3
**seven [1]** 41/15
**shed [2]** 11/18
35/5
**sign [2]** 10/21
10/21
**simple [3]** 7/13
15/7 35/14
**society [1]** 34/23
**someone's [1]**
11/13
**son [2]** 39/9
39/13
**son's [1]** 39/12
**South [2]** 1/14
42/7
**SOUTHERN [1]**
1/1
**specific [1]** 7/19
**spent [3]** 12/23
21/2 21/17
**spot [1]** 36/6
**St [2]** 20/6 26/12
**stable [1]** 40/15
**standard [1]**
41/15
**standing [1]** 6/8
**Star [1]** 39/11
**starting [1]** 2/7
**starts [2]** 8/18
15/14
**state [9]** 12/18
20/19 21/16 21/19
24/1 24/21 25/5
34/14 36/13
**stated [2]** 22/10
26/5
**statement [20]**
3/6 3/8 3/21 3/25
4/2 4/6 4/9 4/12
4/17 4/17 6/6 6/10
6/16 24/2 24/20
24/22 24/24 27/1
27/9 34/13
**statements [11]**
6/24 7/2 24/13
25/7 25/12 25/17
27/16 29/19 32/7

36/1 36/9
**STATES [12]** 1/1
1/3 1/10 2/4 2/9
3/7 3/9 3/11 3/23
19/19 31/19 42/7
**States' [2]** 31/19
33/3
**statute [1]** 33/24
**stem [1]** 3/12
**STEVEN [3]** 1/6
2/5 2/12
**stint [2]** 19/21
20/22
**stipulate [1]** 19/3
**stipulations [1]**
18/22
**stolen [2]** 20/9
20/17
**story [1]** 26/3
**Street [1]** 1/18
**strong [1]** 37/4
**sturdy [1]** 40/15
**submission [1]**
5/12
**submit [12]** 4/11
5/5 5/7 7/8 7/11
9/15 9/23 10/10
14/10 16/17 32/10
36/11
**submits [1]** 9/20
**submitted [11]**
4/10 4/13 4/15
5/24 7/23 8/1 8/10
9/6 9/8 9/9 17/14
**substantial [1]**
34/21
**substantiate [1]**
21/10
**successful [1]**
26/12
**Suite [1]** 1/14
**summary [1]** 39/4
**support [3]** 8/11
32/11 36/10
**supporting [1]**
25/4
**surfaced [1]**
16/11

**T**

**table [1]** 2/14
**terms [3]** 18/23
19/20 20/21

**testimony [1]**
34/3
**Thank [5]** 21/11
21/13 31/12 41/17
41/18
**theft [4]** 20/13
33/23 33/25 34/7
**theory [6]** 7/11
17/10 18/4 25/8
33/4 34/18
**thereafter [1]**
19/11
**thinking [1]** 40/22
**thought [2]** 18/4
28/2
**throw [1]** 33/17
**throwing [1]** 34/2
**thumb [1]** 40/17
**time [17]** 9/20
10/2 11/16 11/20
11/20 12/24 21/2
29/23 30/1 30/4
31/6 31/6 33/10
33/20 33/21 34/6
37/25
**times [1]** 12/25
**timestamp [1]**
34/15
**Title [2]** 3/6 3/9
**today's [1]** 2/20
**total [1]** 38/5
**totally [1]** 29/3
**transcript [2]** 1/9
18/2
**transcription [1]**
42/3
**transport [2]** 20/9
20/17
**travel [4]** 5/2
33/21 33/21 34/5
**traveled [3]** 29/6
34/14 34/15
**trial [11]** 7/15
8/25 9/3 11/14
13/10 14/20 16/7
20/15 33/16 34/4
35/12
**trouble [3]** 14/19
34/22 34/22
**truth [1]** 22/5
**Twenty [1]** 38/9
**Twenty-two [1]**
38/9

## T

**two-count [1]**  3/4
**two-year [2]**
33/25 34/8
**twofold [2]**  31/19
34/18

## U

**U.S [4]**  1/13 1/17
40/8 42/7
**ultimately [1]**
13/1
**unaware [1]**
29/10
**uncontested [2]**
21/25 26/24
**understanding [3]**
18/25 19/2 41/5
**undisputed [3]**
8/22 8/23 9/2
**undisputedly [1]**
8/15
**UNITED [14]**  1/1
1/3 1/10 2/4 2/9
3/7 3/9 3/11 3/23
19/18 31/18 31/19
33/3 42/7
**unquote [1]**  12/24
**untimely [1]**
39/12
**us [3]**  1/14 17/17
20/4

## V

**valid [1]**  37/23
**validly [1]**  24/1
**value [1]**  29/18
**version [1]**  18/12
**versus [1]**  2/5
**via [2]**  7/6 7/12
**violation [2]**  3/6
3/9
**virtue [1]**  6/9
**vs [1]**  1/5

## W

**warning [1]**  34/2
**warrant [10]**  16/9
22/23 22/24 23/2
28/25 29/5 29/8
29/8 29/10 29/10
**warrants [4]**  16/3
16/23 33/1 37/6

**Whenever [1]**
40/9
**white [1]**  40/14
**willfully [4]**  3/20
27/1 27/8 36/9

## Y

**yellow [1]**  36/6